Carl Albert COLLINS *v.* STATE of Arkansas

CR 75-110                                            531 S.W. 2d 13

Opinion delivered December 22, 1975
[Rehearing denied Jan. 19, 1976.]

*John Barry Baker* and *Robert R. Estes,* Public Defenders, Fayetteville, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

*Beryl Anthony,* 13th Circuit Prosecuting Atty; *Lee A. Munson,* 6th Circuit Pros., Atty., *John Wesley Hall Jr* and *Fred Hunt Jr.* Deputies, Amius Curie.

GEORGE ROSE SMITH, Justice. The appellant, Carl Albert Collins, was convicted of a capital felony, the murder of John Welch, and was sentenced by the jury to death by electrocution. The principal issue is the validity of Act 438 of 1973, which reinstated the death penalty after the decision in *Furman v. Georgia,* 408 U.S. 238 (1972). Ark. Stat. Ann., Title 41, Ch. 47 (Supp. 1973). We find the statute to be constitutional.

John and Gertrude Welch, an elderly couple who had been married for 54 years, were living at the time of the crime in a rural home in Washington county. Carl Collins, aged 20, had been working for the Welches for a month, helping Mr. Welch build a barn. On the evening of August 12, 1974, as Carl was being given his wages, he evidently learned that Mr. Welch had several twenty-dollar bills in his wallet.

Carl's brother-in-law brought Carl to work early the next morning. At about 9:15 Carl came from the barn to the house to get the morning's ice water, which was ready. Mrs. Welch testified that Carl suddenly attacked her and struck her repeatedly and painfully on the head with some object she could not identify. Mrs. Welch's screams apparently brought her husband to the house. As he entered he said: "Carl, what is the matter with you?" At that point Mrs. Welch blacked out. When she came to, Carl was running out with a shotgun and a box of shells. He slammed the door behind him and started the Welches' truck.

Welch sustained a mortal shotgun wound. He said:

"Carl shot me and took my billfold. I am not going to make it. Can you make it?" Mrs. Welch answered: "I don't think so. I am bleeding too much." At her husband's suggestion Mrs. Welch crawled to the bathroom and tried to stop the flow of blood by resting her head on a bathmat and applying a towel to her head. She lay there for several hours, getting weaker and thinking that she was dying. Whenever she raised her head she would black out completely.

Help finally arrived at about 2:00 p.m., when a passing telephone repairman happened to come to the house. By then Mr. Welch was dead; the court admitted his statements as a dying declaration. Mrs. Welch testified that her husband's wallet was gone, that the money in her purse was taken, and that the telephone was torn from the wall.

Apart from Mrs. Welch's testimony the State's proof of Carl's guilt was conclusive. The Welches' truck was found abandoned in a wooded area in Madison county. Near it were a hacksaw and the sawed-off end of a double-barreled shotgun. On August 13, the day of the murder, a Volkswagen automobile was stolen in Madison county. That night an officer, who did not know of the theft, saw Carl standing by that car in North Little Rock. When the stolen Volkswagen was recovered by the state police one of Carl's fingerprints was on the steering wheel. In the back seat was the rest of the sawed-off shotgun, which was identified as having come from the Welch home and which matched the portion found near the abandoned truck in Madison county.

In *Furman v. Georgia, supra,* the five-judge majority, in five separate and to some extent conflicting opinions, held that the Georgia and Texas capital punishment statutes were invalid as imposing cruel and unusual punishment. Only two of those five thought that every form of capital punishment is necessarily unconstitutional. The other seven members of the court took the opposite view, which obviously finds support not only in our history but also in the fact that both the Fifth and the Fourteenth Amendments provide that no person shall be deprived of his life without due process of law. Thus the power of the sovereign, both national and state, to take life is recognized by the constitution itself. The fact, as

pointed out by the Oklahoma Court of Criminal Appeals, that Congress and at least 32 states have reinstated capital punishment in the wake of *Furman* effectively rebuts the argument that public opinion with regard to capital punishment has completely changed since the Bill of Rights and the Fourteenth Amendment were adopted. *Williams* v. *State,* 542 P. 2d 554 (Okla. Crim. App., 1975).

The essence of the majority view in the *Furman* case seems to be that capital punishment is constitutionally forbidden whenever the system allows a jury to impose the death penalty in one case and, with no disclosed reason, elect not to impose it in another apparently similar case. Except for that generalization the *Furman* opinions supply little guidance for the lawmakers or for the courts.

The several states have sought to meet the issue in various ways. A number of them, either by legislative or by judicial decision, have concluded that a mandatory death penalty for certain offenses is a permissible form of capital punishment. *State* v. *Sheppard,* 331 A. 2d 142 (Del., 1974); *State* v. *Selman,* 300 So. 2d 467 (La., 1974); *Fowler* v. *State,* 285 N.C. 90, 203 S.E. 2d 803 (1974), cert. granted, 419 U.S. 963 (1974); *Williams* v. *State, supra* (Okla.); *Jefferson* v. *Commonwealth,* 214 Va. 747, 204 S.E. 2d 258 (1974).

Other states, including Arkansas, have taken what seems to us to be a reasonable view not precluded by *Furman.* That view is that all serious felonies of the same kind, such as murder, are not identical either as to the gravity of the offense or as to the moral culpability of the offender. Statutes defining non-capital offenses customarily allow the jury some discretion in the assessment of punishment, such as a sentence to imprisonment ranging from one to twenty-one years. We do not understand *Furman* to prohibit an exercise of discretion in the imposition or non-imposition of capital punishment, if the choice is made reasonably.

Act 438 requires that the jury first determine whether the defendant is guilty of capital felony. If there is a finding of guilt the jury then hears evidence of aggravating or mitigating circumstances, which are enumerated in the act. (All those

circumstances are set forth and discussed in *Neal* v. *State*, also decided today.) The jury then retires again and decides whether the punishment is to be death or life imprisonment without parole. The jury must make a written finding with respect to the various aggravating and mitigating circumstances. Hence the basis for the verdict is known and can be compared with the punishment imposed in other cases. That general approach to the problem has been upheld in other states. *State* v. *Dixon*, 283 So. 2d 1 (Fla., 1973); *Coley* v. *State*, 231 Ga. 829, 204 S.E. 2d 612 (1974); *Jurek* v. *State*, 522 S.W. 2d 934 (Tex. Crim. App., 1975). We agree with their reasoning.

In the case at bar the jury found three aggravating circumstances: (1) That the defendant was previously convicted of another capital felony or of a felony (in this instance, armed robbery) involving the use or threat of violence to the person; (2) that the defendant in the commission of the capital felony knowingly created a great risk of death to one or more persons in addition to the victim; and (3) that the capital felony was committed for pecuniary gain. The jury found one mitigating circumstance: The youth of the defendant at the time of the commission of the capital felony.

Although the court's instructions gave the jury the opportunity to find mitigating circumstances other than those enumerated in the statute, no such finding was made. The court also explained that the jury's decision was not to be based solely upon the number of either aggravating or mitigating circumstance, the court observing that just one mitigating circumstance might offset three or more aggravating circumstances. The ultimate issue submitted was whether the jury found beyond a reasonable doubt that sufficient aggravating circumstances existed to justify a sentence of death. We conclude that Act 438 is valid, that the issues were properly submitted to the jury, and that the verdict is sustained by the evidence.

In a related point for reversal the appellant argues that death by electrocution is unconstitutionally cruel. Counsel concede that the Supreme Court has upheld this method of capital punishment. *Louisiana ex rel. Francis* v. *Resweber*, 329

U.S. 459 (1947); *In re Kemmler*, 136 U.S. 436 (1890). It is insisted, however, on the basis of books or articles having to do with capital punishment, that death by electrocution is not necessarily instantaneous and may subject the condemned person to extreme pain.

We are not convinced by this argument. As the court indicated in *Kemmler*, *supra*, the constitution prohibits punishments involving torture or other *unnecessary* cruelty. It is doubtless true that some pain my attend any form of execution, whether by electrocution, hanging, the gas chamber, or the firing squad. But the record contains no proof on the subject, as it did in *Kemmler*, and we certainly cannot take judicial notice that electrocution is needlessly cruel.

We find no merit in appellant's argument that the trial judge, in submitting the issue of guilt or innocence, indicated to the jury that he believed the defendant to be guilty. The court's remarks, taken as a whole, fairly submitted the issue. Specifically, the court correctly stated to the jury that their initial determination "does not fix the punishment, whatsoever. It merely establishes the degree of guilt, if any." The court went on to add, upon the objection being made: "It [the verdict] can be not guilty, second degree, or capital offense. Return one of those." Suffice it to say, we do not find the court's instructions to have been misleading.

On redirect examination Mrs. Welch testified that she thought she was dying, "so I took the blood—I took my finger and I took the blood [Objection by defense counsel] from my body and wrote, 'Carl killed us.' " The trial court sustained the objection and instructed the jury to disregard the statement. It is now contended that the witness's testimony was so inflammatory that a mistrial should have been declared.

We are not impressed by this argument. In fact, the court's ruling was more favorable to the defendant than it need have been. The testimony was competent, as bearing upon the admissibility of Welch's dying declaration. Moreover, Mrs. Welch was narrating an unbroken sequence of events, beginning with the vicious, unprovoked, murderous attack upon her and her husband and continuing until she

was discovered by the telephone repairman, who had already testified. We do not think the trial court was called upon to interrupt the narration at the point of counsel's objection, on the premise that part of the unbroken sequence of events was too inflammatory to be heard by the jury. For that matter, what the jury had already heard seems to us to be more inflammatory than the testimony now in question.

We find no error in the trial court's refusal to allow the defense to have the opening and closing argument upon the issue of the punishment to be imposed. The State sought the death penalty. The statute allows that penalty only when the jury finds beyond a reasonable doubt that the aggravating circumstances justify it. Section 41-4710. Hence the State had the burden of proof, which carried the right to open and close. The California case relied upon by the appellant, *People v. Bandhauer*, 58 Cal. Rptr. 332, 426 P. 2d 900 (1967), is distinguishable, for there the court said that neither side had the burden of proving "that one or the other penalty is the proper one." We construe our statute as casting the burden of proof upon the State, for if the jury is not convinced beyond a reasonable doubt that capital punishment is justified the sentence to life imprisonment without parole is automatic. Thus the defense has no burden of proof upon the issue.

Finally, it is argued, under the rule laid down in *Gerstein v. Pugh*, 420 U.S. 103 (1975), that the appellant's liberty was unlawfully restricted after his arrest, because there was no judicial determination of probable cause for the arrest. Even so, the *Gerstein* case expressly holds that a conviction will not be vacated on the ground that the defendant was detained pending the trial without a determination of probable cause.

We have, as the statute requires, examined all possible errors that might be prejudicial. Ark. Stat. Ann. § 43-2725 (Supp. 1973). We find that the defendant received a fair trial, free from prejudicial error.

Affirmed.