Carl Albert COLLINS, Petitioner,

v.

A. L. LOCKHART, Director, Arkansas Department of Correction, Respondent.

No. PB C 81 271.

United States District Court, E. D. Arkansas, W. D.

May 28, 1982.

Thomas M. Carpenter, Jeffrey M. Rosenzweig, Little Rock, Ark., for petitioner.

Victra L. Fewell, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM AND ORDER

OVERTON, District Judge.

Carl Albert Collins filed a petition for habeas relief asking this Court to vacate his death sentence and order a new trial. Petitioner was convicted of capital felony murder in December, 1974, and was sentenced by a jury to death by electrocution. His case has been the subject of several ap-

peals.[1] The most recent order of execution was stayed pending resolution of this petition.

A threshold problem is presented by the recent decision in *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Respondent's initial pleading was filed before the *Rose* decision when case law clearly established that petitioner in this case had effectively exhausted his state court remedies. After *Rose*, respondent moved to dismiss the petition alleging that Collins had not presented some of the issues in the petition to state court and, therefore, had not totally exhausted state court reviews of all of his claims. This argument was founded on the contention that theoretically the Arkansas appellate courts might entertain successive Rule 37 petitions which present new allegations of constitutional magnitude.

Before the evidentiary hearing on petitioner's pending writ, however, respondents' attorney conceded that as a practical matter petitioner had exhausted his state remedies on all issues. The Court is convinced respondent's concession is well taken.[2]

Following an evidentiary hearing and the submission of briefs by the parties, the Court enters its findings of fact and conclusions of law as follows:

## I.

Petitioner principally contends he was denied effective assistance of counsel during the penalty phase of the trial because his attorneys presented no evidence in mitigation. This general claim incorporates a number of specific alleged deficiencies and omissions. In order to put the issue in perspective, the Court will recite the factual situation faced by the trial attorneys as they prepared for trial.

Petitioner was charged with the murder of a 72 year old man. A principal witness for the prosecution was the victim's widow who was brutally beaten during the commission of the crime. The evidence of petitioner's guilt was, to say the least, conclusive. Petitioner fled the scene of the crime and was later captured in Tennessee after he kidnapped a man at gunpoint. The evidence at trial established his guilt of the offense beyond a reasonable doubt. The state also established beyond a reasonable doubt that the motive for the murder was robbery.[3]

Petitioner's trial attorneys were John Lineberger, Public Defender for Washington County, and John Baker, an Assistant Public Defender. Mr. Lineberger was an experienced criminal defense attorney who had participated in several murder cases in which the State had sought the death penalty. Mr. Baker, although somewhat less experienced than Mr. Lineberger, had trial experience in both murder and capital felony murder cases.

In preparation for the penalty phase of the trial, at least one or both defense attorneys performed the following tasks: they conferred with petitioner on a number of occasions; they employed two investigators who traveled to petitioner's home town to locate and interview potential witnesses; the investigators or attorneys interviewed all potential witnesses suggested by petitioner; they obtained the prosecutor's file; they submitted petitioner to examination by a psychiatrist and a psychologist; they obtained the results of an examination of petitioner at the Arkansas State Hospital; and they interviewed petitioner's mother, step-father, sister and brother-in-law, all in an effort to establish evidence in mitigation.

During the course of trial preparation, petitioner was not particularly helpful to the attorneys. He conveyed the impression that he was angry, volatile, short tempered and arrogant. He apparently refused to

---

1. A stipulation which recites the various appeals and issues raised in each proceeding has been filed. The stipulation is incorporated by reference as part of the memorandum.

2. See, *Collins v. State of Arkansas*, 271 Ark. 825, 611 S.W.2d 182 (1981). See also, unpublished opinion of Judge Eisele in *Hulsey v. Sargent*, PB C 81 2 (E.D.Ark. Nov. 11, 1981).

3. See, Trial Transcript.

recognize or concede that a death penalty sentence was a real possibility, arguing to his attorneys that it was "unconstitutional" or "not in effect". Petitioner was not consistent in his attitude about the victim of his crime. On some occasions, he would tell his attorneys that Mr. Welch was a good man and that he could not understand why anybody would kill him. On other occasions, he would tell the attorneys that Mr. Welch deserved what he got.

The attorneys were not able to develop any information about petitioner's background which was helpful. As one of the attorneys described it, every time they thought some potential witness had helpful information on the mitigation issue, the same witness was found to know something about petitioner which proved to be a "monster in the closet".

Petitioner was one of many children from a poor family. He was neglected by his parents and subjected to abuse from his father. Beginning at the age of ten he was constantly in and out of State correctional institutions. He had an extensive juvenile record, which included an incident in which he shot his own grandmother who caught him burglarizing her house. He had a history of drug abuse. Petitioner had no significant history of school attendance or employment. The people who had taken an interest in him and offered some help in his earlier years had become discouraged and frustrated because of his lack of response. Dr. Jones, a woman in Collins' home town who took an interest in him when he was a youngster and tried to get him involved in church activities, was one such person who finally concluded that petitioner was incorrigible and "used" people.

Dr. Finch, the psychiatrist who examined petitioner for the trial attorneys, told them he was confident Collins was not insane and that he was "negatively impressed" by him. The psychologist and rehabilitation counselor who worked with Collins also told the attorneys they could provide no help in the mitigation phase of his case.

The efforts of the trial attorneys to develop mitigation evidence was further frustrated by a number of important factors. First, the petitioner had an unusual habit of giggling at inappropriate times. Second, none of petitioner's family was helpful, and his mother and step-father, Mr. and Mrs. Torix, refused to testify and did not want to "get involved" in the case. Third, the prosecutor was an experienced, capable trial attorney who had conducted an extensive investigation into Collins' background and was prepared to use the damaging information if the opportunity presented itself when issues were opened up by direct testimony from defense witnesses. The prosecutor was also aware of petitioner's arrogant attitude and short tempered personality trait which he was fully capable of exploiting on cross-examination. Fourth, the jury was composed of people from generally rural areas, and they had little patience with such "mitigating circumstances" as "drug abuse" and "deprived background". Last, at the time of trial, petitioner was 19 years old and had a rather benign, youthful appearance.

With this general background, the Court will turn to the allegations and suggested criticisms of the trial attorneys.

### First: The failure to offer evidence in mitigation.

The attorney whom petitioner called as an expert witness testified at the evidentiary hearing that petitioner's trial attorneys should have "done something" in the way of providing evidence in mitigation and, specifically, should have put the petitioner on the stand to "beg for his life".

The Court cannot accept such a suggestion. Initially, the Court believes that the trial attorneys discussed with petitioner whether he should take the stand (in both guilt *and* penalty stages), and he told them he did not want to testify. Furthermore, the petitioner was potentially his own worst enemy as a witness. Finally, petitioner could not be counted on to "beg for his life" or express "remorse" for the crime. This was abundantly clear at the evidentiary hearing on the pending writ. At the hearing, petitioner was asked that if he had

been permitted to testify at the trial, would he have begged for his life. He responded that he "*probably* would have". Upon further prompting, he said he "probably would have told the jury he knew everybody had to die sometime, but he wasn't ready to die yet". Given petitioner's temperament, personality trait of giggling at inappropriate times, erratic responses to the attorneys about the crime and his lack of "remorse", it is easy to understand why the attorneys were reluctant to put him on the stand. Given the potential uncertainties of petitioner's testimony, the chances of successfully "begging for the life" of a benign, youthful appearing 19 year old could best be left to an articulate, experienced defense lawyer in closing argument.

The suggestion that the trial attorneys failed to utilize petitioner's mother and step-father as witnesses in the mitigation phase is without merit. First, they refused to "get involved". The Court does not credit the testimony of Mr. and Mrs. Torix that the trial attorneys never really interviewed them or tried to get them to testify. More importantly, however, Mr. and Mrs. Torix had no evidence which would have been helpful. Their testimony at the evidentiary hearing was almost pathetic. They simply could not be used as witnesses to establish a "favorable" impression of Collins. Their few conclusory "good" statements would have easily been counterbalanced by devastating factual evidence available to the prosecutor. (Contrary to the assertion of petitioner, a motion in limine would not have effectively prevented the prosecutor from developing much of the potentially damaging information about petitioner's background on cross-examination even though it would not have been admissible if offered by the prosecutor as direct evidence.) Finally, it would have been dangerous to use Mr. and Mrs. Torix to establish petitioner's "deprived background" because their testimony tended to prove that Collins was simply incorrigible.

Another aspect of petitioner's criticism of his trial attorneys revolves around their failure to use information in the State Hospital records which established that petitioner had a "deprived" background and suffered from the effects of drug abuse, and that his "antisocial" personality was better suited to a structured prison environment than the free world. While such an argument may appeal to a sociologist, it is easy to appreciate why the trial attorneys would have been apprehensive about presenting such evidence to a Washington County jury. While establishing the "deprived background", the attorneys would also establish that petitioner was incorrigible, had little regard for society or the law and, in the eyes of most of the jury, was totally worthless. Petitioner's other arguments about the attorneys' failure to present evidence in mitigation are simply shades and phases of the specific deficiencies already discussed.

In summary, the Court concludes that hindsight cannot be used to now argue that putting on "something" in mitigation during the penalty phase would have been better than no evidence at all. See, *Hinkle v. Scurr*, 677 F.2d 667 (8th Cir. 1982). One way to keep the issue in perspective is to consider what petitioner would now be arguing if his trial attorneys *had* put him on the stand knowing what they knew at the time and he had gotten the death penalty. Or, if the attorneys had opened up his past to cross-examination by trying to establish his deprived background and history of drug abuse and if he had thereafter gotten the death penalty. Needless to say, fertile argument would exist that his attorneys had exercised inexcusable judgment.

In *United States v. McMillian*, 606 F.2d 245, 247 (8th Cir. 1979), the Eighth Circuit reiterated the test used in this circuit to evaluate the effectiveness of counsel:

In this circuit, the evaluation of a petition alleging ineffective assistance of counsel involves a two-step process. *Rinehart v. Brewer*, 561 F.2d 126 (8th Cir. 1977). The petitioner must first show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. *United States v. East-*

er, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844 [98 S.Ct. 145, 54 L.Ed.2d 109] (1977). Second, the petitioner must demonstrate that he was materially prejudiced in the defense of his case by the actions or inactions of his counsel. *Nevels v. Parratt*, 596 F.2d 344 (8th Cir. 1979); *Morrow v. Parratt*, 574 F.2d 411 (8th Cir. 1978); *Rinehart v. Brewer, supra*.

The Eighth Circuit recently increased the petitioner's burden somewhat by holding that he must *at least* show dereliction of duty in order to prevail. *Zaehringer v. Brewer*, 635 F.2d 734 (8th Cir. 1980); *United States v. Rhodes*, 617 F.2d 1313 (8th Cir. 1980). In addition, the legal standards for constitutionally adequate assistance of counsel are not higher in capital cases. *Washington v. Watkins*, 655 F.2d 1346, 1357 n.18 (5th Cir. 1981). Petitioner failed to meet the burden imposed upon him of proving that his attorneys were ineffective.

### Second: Trial counsel's failure to request jury instruction of First Degree Murder.

Petitioner contends he was denied effective assistance of counsel because his trial attorneys failed to request a jury instruction on the lesser included offense of first degree murder. The attorneys concluded that as a matter of trial tactics they should request submission of an instruction on second degree murder as an alternative finding to the prosecutor's requested instruction of capital felony murder. The attorneys discussed with Collins their proposed submission of the case to the jury and Collins concurred with their recommendation. (Collins' concurrence in this decision is of little significance since it is doubtful that he had an intelligent understanding of the tactic. In any event, this Court is satisfied that the question was presented to him and he approved the strategy.)

■ Citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), petitioner's present counsel argues that the trial attorneys have not adequately explained why no request was made for an instruction on first degree murder. The burden is not upon the trial attorneys to explain or justify every exercise of professional judgment in the trial of a case which occurred seven years ago. To the contrary, there is a presumption that the attorneys rendered effective assistance and petitioner has the "heavy burden" of demonstrating the contrary. Petitioner has failed to establish that this exercise of professional judgment was an unreasonable decision which demonstrates a lack of professional skill on the part of trial counsel. See, *Hinkle v. Scurr*, 677 F.2d 667 (8th Cir. 1982). Also, *Beck v. Alabama, supra*, is inapposite since the Alabama statute in question in that case specifically denied the jury the opportunity of finding the defendant guilty of a lesser included offense in a capital felony case. The only option available to the jury was conviction for capital felony murder with the death penalty or acquittal. As to other aspects of this argument raised in petitioner's Rule 37 petition, this Court agrees with the decision of the Arkansas Supreme Court reported at Page 831 of 271 Ark., 611 S.W.2d 182 (1981).

### Third: The jury was improperly instructed during the penalty phase because it was told that Collins had the burden of proof on mitigation evidence.

■ At the trial, petitioner's attorney objected to a portion of the trial court's instruction which the attorney interpreted as placing the burden upon petitioner to establish mitigating circumstances in the penalty phase. When the objection was made, the trial court corrected any such impression by stating: "The matter of mitigating circumstances is an opportunity the defendant has. There is no burden on him at all. The burden is on the state in the whole case . . .,". (Trial record at 278).

The Arkansas Supreme Court reviewed the entire record for error on direct appeal and concluded the petitioner received a fair trial free from prejudicial error. *Collins v. State*, 259 Ark. 8, 531 S.W.2d 13 (1975). This issue was again reviewed by the Arkansas Supreme Court as part of the Rule

37 proceeding. *Collins v. State*, 271 Ark. 825, 832, 611 S.W.2d 182, 188 (1981). This Court agrees with the conclusion of the Arkansas Supreme Court. The trial judge's instructions did not place the burden of proof upon petitioner to establish mitigating circumstances at the penalty phase, and if any part of the instruction could be so construed, the potential error was specifically corrected.

*Fourth: Arkansas' capital murder statute, as applied to Collins, is arbitrary and capricious.*

▮ This issue was exhaustively reviewed in the second opinion on petitioner's direct appeal to the Arkansas Supreme Court. *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977). No purpose is served by another detailed analysis of the arguments raised in connection with that issue. Suffice it to say, this Court agrees with the reported opinion of the Arkansas Supreme Court. Application of the statutory scheme set up in the Arkansas capital punishment statute is not arbitrary and capricious.

*Fifth: A "death qualified" jury is not representative of a cross section of the community and such a jury is "guilt prone".*

▮ This issue is presented in a puzzling fashion, presumably because petitioner's present counsel recognizes the hurdles involved with the argument. Basically, the argument is grounded upon the claim that petitioner did not receive a fair trial on the guilt phase of his case because a *"death qualified"* jury is more likely to convict than a *"cross section"* jury which includes people opposed to the death penalty.

Petitioner did not present evidence in support of the argument at the evidentiary hearing on this writ. As a matter of fact, the only reference to the argument is contained in the post hearing brief where petitioner states:

> Collins notes that no evidence was taken on the issue of whether a death qualified jury fails to represent a cross section of the community. Should the trial court

wish evidence on this point Collins would ask that the record be held open or that the trial court incorporate by reference the transcripts and briefs in *Griggsby v. Mabry*, No. PB–C–78–32, Eastern District of Arkansas.

*Griggsby v. Mabry* is a case currently under advisement before Chief Judge Eisele in which an evidentiary hearing addressed the issue of whether a death qualified jury is "guilt prone".

This Court does not need to refer to the record and briefs in *Griggsby*, however, because no objection was made to the composition of Collins' jury at the trial. Collins now contends "cause" exists for failure to make such an objection since an objection would have been "futile".

The effect of a failure to make a timely objection to a death qualified jury is waiver of the objection. In *Hulsey v. Sargent*, No. PB C 81 2 (E.D.Ark., Nov. 11, 1981), Judge Eisele considered the same arguments raised here by petitioner and concluded there is no legal "cause" for failing to raise the issue in a timely fashion. This view is in keeping with the most recent decision on the subject by the Supreme Court in *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

▮ Furthermore, a convicted defendant must show both "cause" excusing his failure to object and "actual prejudice" resulting from the error of which he complains. A showing that the error worked to his *actual* and substantial disadvantage is required; merely showing that there was a *possibility* of prejudice is not sufficient. *United States v. Frady*, —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

As previously noted, the proof of Collins' guilt was conclusive. It stretches the imagination to believe that *any* cross section jury would have failed to find him guilty of the offense. This Court is satisfied that the same result would have been reached in Collins' case if a non-death qualified jury had tried the guilt phase and a death qualified jury had tried the penalty phase. In any event, petitioner failed to object to the

composition of the jury and thereby waived the "death qualified" argument. Furthermore, there is no showing of actual prejudice because the proof of petitioner's guilt was conclusive and any jury would have so concluded at the guilt phase of the trial.

*Sixth: Petitioner claims that a witness who acted as bailiff was permitted to remain in the courtroom and interact with the jury, thereby bolstering his credibility with the jury.*

■ There are several answers to this allegation. First, the factual assertion is simply not true. An affidavit of the bailiff was submitted as representative of his testimony if called as a witness at the evidentiary hearing. The affidavit belies the contention that the bailiff "interacted with the jury". No evidence was introduced to the contrary.

Second, no objection was made by petitioner regarding the witness' presence in the courtroom and the matter was specifically discussed by trial counsel and trial judge before the trial began. The objection was, thereby, waived. Furthermore, at the time the decision was made, counsel and trial judge were aware of the prohibitions against improper enhancement of witness credibility raised in *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) and care was taken to see that the witness did not "interact" with the jury. There is no evidence of actual or potential prejudice as a result of the witness' presence in the courtroom.

Finally, this issue was raised before the Arkansas Supreme Court and its findings on the issue are dispositive. See *Collins v. State*, 271 Ark. 825, 835, 611 S.W.2d 182, 186 (1981).

*Seventh: Arkansas' capital murder statute was unconstitutionally void for vagueness because of the overlapping nature of the capital murder statute with the statute of murder in the first degree.*

■ This issue was never clearly raised before the Arkansas courts by petitioner. The issue has, however, been decided re-

peatedly as a matter of law by the Arkansas Supreme Court. *Wilson v. State*, 271 Ark. 682, 611 S.W.2d 739 (1981); *Miller v. State*, 273 Ark. 508, 621 S.W.2d 482 (1981); *Cromwell v. State*, 269 Ark. 104, 598 S.W.2d 733 (1980).

*Eighth: The evidence is insufficient to support a conviction of capital felony murder because it did not establish beyond a reasonable doubt that murder was committed for the purpose of robbery.*

■ This Court has reviewed the transcript of the trial and, as previously stated, is satisfied that the evidence is sufficient to sustain a finding that the murder was committed for the purpose of robbery. There is substantial evidence that Collins robbed Mr. Welch after he shot him. Additionally, Welch made a dying declaration to his wife that, "Carl shot me and took my billfold. I am not going to make it . . . . ." (Tr. 176–177) The Arkansas Supreme Court reviewed this issue on both direct appeal and the Rule 37 proceeding and on each occasion found the evidence sufficient to support the finding.

*Ninth: Denial of effective assistance of counsel, and a fair trial, because the jury selected was death qualified and was not chosen during individual, sequestered voir dire.*

■ The issue as to a death qualified jury was discussed in Part 5, *supra*. Petitioner failed to provide any persuasive evidence at the hearing that trial counsel's failure to object to a death qualified jury represented a failure to "exercise the customary skills and diligence that a reasonably competent attorney would have exercised under similar circumstances . . ." *Hinkle, supra*.

■ With respect to the claim that individually sequestered *voir dire* is essential to a fair trial or that trial counsel was derelict in failing to request it, petitioner's evidence and argument are not persuasive. Trial counsel investigated the jury panel called for petitioner's case and they were familiar

with the jurors. Mr. Lineberger, lead counsel, thought that questioning jurors in an individually sequestered atmosphere is sometimes counterproductive since the juror often gets the impression that the attorneys are giving him the "third degree". Additionally, individually sequestered voir dire of jurors in Arkansas is not customary. Finally, the trial attorneys were "very pleased" with the jury which was selected.

*Tenth: The capital murder statute is unconstitutionally vague because of the language, "under circumstances manifesting an extreme indifference to the value of human life".*

■ The language complained of by petitioner was not part of the language of the statute in force at the time of petitioner's conviction. It has been added in a subsequent amendment to the statute. Ark.Stat. § 41–1501 (Repl.1977). Furthermore, the issue was never raised before the Arkansas courts in any of petitioner's state court proceedings.

*Eleventh: The aggravating circumstance of "pecuniary gain" in the penalty portion of the statute is unconstitutionally vague and further subjects petitioner to double jeopardy.*

■ Petitioner has never raised this issue before the Arkansas courts. The Arkansas Supreme Court has held, however, that the aggravating circumstance that the capital murder was committed for pecuniary gain is of such "common understanding and practice" that an ordinary man or juror would not have to speculate as to its meaning. *Neal v. State*, 259 Ark. 27, 32, 531 S.W.2d 17 (1975). It has further upheld Ark.Stat.Ann. § 41–4711(e) (Supp.1973) its successor, and Ark.Stat.Ann. § 41–1303(6), as applying to murders committed during a robbery. *Miller v. State*, 269 Ark. 341, 356, 605 S.W.2d 430 (1980) (substituted opinion on rehearing); *Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977). *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), held that the Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. Since petitioner was only tried once, sentenced once and had only one punishment imposed, it is obvious that there is no violation of the Double Jeopardy Clause.

*Twelfth: Act 438 of 1973 unduly restricted the types of evidence that could be put on in mitigation and improperly requires the defendant to justify a sentence of life without parole.*

■ This point has no application to petitioner's case. First, there is no evidence that restrictions in the statute limited trial counsel in any way in their decision not to put on evidence at the penalty phase. To the contrary, they elected not to put on evidence as a matter of trial strategy.

Furthermore, as pointed out by the Arkansas Supreme Court, the trial court specifically instructed the jury that it could find mitigating circumstances other than those enumerated in the statute. *Collins v. State*, 259 Ark. 8 at 13, 531 S.W.2d 13, 16 (1975). The issue was again addressed by the Arkansas court in the Rule 37 review and decided adversely to petitioner. *Collins v. State*, 271 Ark. 825, 832, 611 S.W.2d 182, 187 (1981). This Court agrees with those decisions.

### Conclusion

For the foregoing reasons, the petition seeking habeas relief is denied.