DeWayne HULSEY *v.* STATE of Arkansas

CR 76-125                                                549 S.W. 2d 73

Opinion delivered April 11, 1977
(In Banc)

450

*Kinney & Easley,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. Appellant DeWayne Hulsey was charged with capital felony murder in violation of Ark. Stat. Ann. §§ 41-4701, et seq. (Supp. 1973). The facts developed at trial indicated that appellant while robbing a

service station shot the attendant seven times, causing his death. After trial by jury appellant was found guilty as charged. The jury then heard evidence of aggravating and mitigating circumstances and after further deliberation determined appellant should be sentenced to death by electrocution.

Appellant raises for the first time on appeal the argument that prospective juror John L. Clark should have been excused for cause. The record discloses that the trial judge, upon learning that Juror Clark was a first cousin of the sheriff of St. Francis County, checked the statutes governing challenging of jurors for cause and voir dired Clark, but refused to excuse him. Appellant did not object to the trial court's actions, nor did he ask that Clark be excused for cause. This Court has held that even in capital cases an objection must be made in the trial court in order to raise an issue on appeal. *Neal* v. *State,* 259 Ark. 27, 531 S.W. 2d 17 (1975).

However, if we consider the merits, we find no support for appellant's claim that Clark should be excused for cause. The sheriff was not a party to the action, and he did not testify. Furthermore, Clark testified on voir dire that he would give equal credence to the testimony of witnesses for the defense and the State.

On appeal appellant did not raise the issue of whether his confession was voluntary, but since this Court, pursuant to Ark. Stat. Ann. § 43-2725 (Supp. 1975), must review the record for all errors prejudicial to him, we will discuss the admissibility of the confession.

The trial court, pursuant to Ark. Stat. Ann. § 43-2105 (Supp. 1975), held the required *Denno* hearing to consider the circumstances surrounding the giving of appellant's confession to law enforcement officers. *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Under this statute it is the duty of the court " . . . before admitting said confession into evidence to determine by a preponderance of the evidence that the same has been made voluntarily. The trial court after hearing the testimony of four witnesses ruled appellant's confession had been freely and voluntarily given.

The evidence at the *Denno* hearing included the testimony of all the police officers present when the confession was signed and a copy of rights statement signed by appellant. The rights statement form showed that appellant stated he understood he had the right to remain silent; that anything he said could be used against him in court; that he could consult with and have an attorney present before making any statement or answering any question; that if he could not afford an attorney one would be appointed and that he could stop the questioning at any time if he so desired.

Deputy Sheriff James Jones testified he was present when appellant signed the rights statement. Deputy Claude Ramsey testified the rights statment form was read to appellant and signed by him. Deputy Sheriff George Irwin testified he was present when appellant signed his confession and heard the confession read to appellant before he signed it. State Police Officer W. D. Davidson testified he read the statement of rights form to appellant, inquired as to whether appellant wished to waive his rights and witnessed the signing of the rights form. Davidson further testified that neither he nor anyone in his presence threatened, coerced or intimidated appellant, or promised leniency to appellant in order to obtain the confession. Thus the preponderance of the evidence reflects appellant's confession was voluntary and was properly admitted by the trial court. *Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974).

Appellant next contends the court abused its discretion in admitting certain photographs of the body of the victim because cotton swabs were sticking out the bullet wounds in the victim's face. It is urged that the pictures were inflammatory, prejudicial and unnecessary. An examination of the photographs does not indicate the cotton swabs made the pictures prejudicial in any way.

Deputy Sheriff Irwin testified he asked a nurse to place some cotton-tip swabs in the facial area of the decedent to determine the number of wounds and the direction of travel of the bullets; that it was necessary to use the cotton-tip swabs because the large amount of blood made it difficult to find the bullet holes. The State Medical Examiner testified the decedent had four gunshot wounds to his head and face

and three more to other parts of the body.

At the prosecuting attorney's request the trial court gave a precautionary instruction, stating:

> Ladies and Gentlemen, I'm going to permit these pictures to be passed and viewed by you. You have heard what it is that has been added, why they were so added, and you will disregard the pictures for any other purpose other than to help you understand where the deceased was shot.
>
>     *   *   *
>
> Furthermore, you may consider the pictures for purposes of showing the ferocity of the attack upon the deceased.
> *   *   *

It was proper for the jury to consider the photographs to determine the savagery of the attack upon the victim. *Witham v. State,* 258 Ark. 348, 524 S.W. 2d 244 (1975). Since the photographs corroborate appellant's confession and clearly depict the wounds inflicted upon the victim, the trial judge properly admitted them. *Tanner v. State,* 259 Ark. 243, 532 S.W. 2d 168 (1976). See also *Shipman v. State,* 252 Ark. 285, 478 S.W. 2d 421 (1972), wherein we stated the trial court has "wide discretion" in admitting photographs into evidence.

Prior to trial appellant filed a motion to suppress eyewitness identification because of a prejudicial line-up. Appellant did not pursue the motion when he learned there had not been a line-up but that the pre-trial identification was made by photographs.

Even if the pre-trial identification had been questioned on appeal, we find it was properly handled. A pre-trial hearing was conducted to determine whether the pre-trial photographic identification was tainted. After hearing evidence the trial court ruled the pre-trial identification procedure was conducted in accordance with all the requirements of the law.

At the hearing Tim Brooks, the person who made the pre-trial identification, testified he picked appellant's picture from a group of pictures and that when he saw appellant at the murder scene the lights at the service station were on, visibility was clear and appellant was about three feet away at one of the times he observed him. Deputy Sheriff Irwin testified he showed Brooks pictures of seven or eight white males and that Brooks picked out appellant's picture; that he (Irwin) did not indicate any particular photograph; and that when the order was rearranged Brooks again immediately picked out appellant's photograph.

From testimony and the totality of the circumstances we find the State has shown that there is no likelihood of mis-identification in this case. *Pollard* v. *State,* 258 Ark. 512, 527 S.W. 2d 627 (1975).

Appellant next contends the trial court prejudiced the jury by commenting on the credibility of appellant's testimony and that of Dr. Sophia McCay.

At the trial during cross-examination of appellant the following exchange took place.

THE COURT: Mr. Hulsey, please answer the questions.

THE DEFENDANT: I've answered the question as best I know how.

THE COURT: You have not answered it, Mr. Hulsey.

BY MR. RAFF: Q. I'll repeat it to you one more time, and I am referring to this statement. Did any of the officers ask you to read this statement?

A. They asked me to read a statement similar.

MR. RAFF: Your Honor—

THE DEFENDANT: I don't see how I can give—

MR. EASLEY: The defendant said the statement was on yellow legal paper.

THE COURT: He asked him if they asked him to read that statement there. Yes or no.

THE DEFENDANT: No, not that statement.

MR. EASLEY: He denied it.

MR. RAFF: No, sir, he has not answered the question, and it's been propounded six times.

THE COURT: He just answered no. Now it has been answered.

The pertinent part of the examination of Dr. McCay follows:

MR. KINNEY: Let the witness finish.

MR. RAFF: She answered the question, and then she goes into other areas not covered by the question.

MR. KINNEY: She's entitled to do this.

MR. RAFF: She is entitled to give an explanation of her answer, but not to answer others.

THE COURT: She is entitled to answer the question, but not quibble or explain it away.

MR. KINNEY: If it requires an explanation, then she, as an expert witness, is entitled to give that explanation.

Thereafter the court allowed the witness to make a full explanation of her answer. The record discloses appellant did not object, ask for a mistrial or request the jury be admonished in connection with the court's remarks concerning Dr. McCay or appellant. The law is well settled that even in capital cases an objection must be made in order to raise an issue on appeal. *Neal v. State, supra; Fields v. State,* 235 Ark.

986, 363 S.W. 2d 905 (1963); and *Johnson* v. *State,* 127 Ark. 516, 192 S.W. 895 (1917).

> \* \* \* If appellant was under the impression that the remark made by the court was prejudicial it was his duty to so inform the court and give it an opportunity to make a retraction or explanation to the jury.

> *Roach* v. *State,* 222 Ark. 738, 262 S.W. 2d 647 (1953).

We also note the trial court gave the following instruction:

\* \* \*

> I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who testified. If anything that I have done or said has seemed to so indicate, you will disregard it.

We do not view the remarks made by the trial judge as comments on credibility of the witnesses, but as comments necessary to control the examination of the witnesses.

Appellant also seeks reversal of his conviction on grounds that the trial judge should have given a cautionary instruction even though he had sustained appellant's objection to the question, "Are you a penitentiary man?" At trial appellant did not ask the trial judge to give a cautionary instruction, and he cannot now raise the failure to give one as grounds for reversal. In *Gammel & Spann* v. *State,* 259 Ark. 96, 531 S.W. 2d 474 (1976), this Court stated:

> Since Spann did not request that the trial judge admonish the jury relative to the testimony about "some other guy," he is in no position to argue his complaint on appeal based on the judge's failure to do so. \* \* \*

This Court held that similar questions did not amount to

reversible error. In *Coleman* v. *State*, 256 Ark. 665, 509 S.W. 2d 824 (1974), the Court found no prejudice in the question, "Mr. Coleman, you're what is known in contemplation of the law as a habitual criminal, is that correct?" See also *Miller* v. *State*, 250 Ark. 199, 464 S.W. 2d 594 (1971). We find no error on this point.

Appellant next contends the jury was illegally constituted because of age discrimination and he was thereby deprived of certain constitutional rights. He specifically contends that because he was only 22 and the jurors were years older he did not have a fair trial by his peers. However, no motion to quash the jury wheel was filed, no motion alleging age discrimination was made prior to trial and no evidence nor proffer of proof was made that young people had been systematically excluded from jury service. We have held in a number of cases that an issue cannot be raised for the first time on appeal even in capital cases. *Neal* v. *State, supra; Fields* v. *State, supra;* and *Johnson* v. *State, supra.*

Appellant urges that because of recent decisions even though this issue was not raised in the trial court he should be allowed to raise it on appeal. We find no merit here as the United States Supreme Court, over thirty years ago, recognized that systematic exclusion of a particular group from jury service constituted a violation of the Sixth and Fourteenth Amendments to the Constitution of the United States. *Norris* v. *Alabama*, 294 U.S. 587, 55 S. Ct. 579, 79 L. Ed. 1074 (1935). If appellant felt the jury panel did not represent a proper cross section, he should have timely filed a motion to quash the jury panel and adduced proof on the issue.

Appellant contends the trial court placed an unconstitutional burden of proof upon him when it instructed the jury it might consider five or more mitigating circumstances.

At trial counsel stated: "Your Honor, they [the instructions] are good for the defendant." Appellant by failing to object to the instructions cannot now raise the issue on appeal even though this is a capital case. See *Neal* v. *State, supra.* Rule 13 of the Uniform Rules for Circuit and Chancery

Courts, Ark. Stat. Ann., Vol. 3A, p. 139 (Supp. 1975), provides:

> No party may assign as error the giving or the failure to give an instruction to a jury unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection. The trial judge shall give all parties an opportunity to make objections to instructions out of the hearing of the jury.

> A mere general objection shall not be sufficient to obtain appellate review of the trial court's actions relating to instructions to the jury except as to an instruction directing a verdict or the court's action in declining to do so.

\* \* \*

Furthermore the instructions reflect that the court did not place any burden on appellant to prove mitigating circumstances. The court stated each side would be permitted to put on testimony regarding mitigating or aggravating circumstances, and that all the evidence previously presented might be considered in determining the verdict. As to the aggravating circumstances the court instructed they must be found to exist beyond a reasonable doubt. As to mitigating circumstances he imposed no burden of proof but stated:

\* \* \*

> A mitigating circumstance is one which does not excuse the offense in question but which, in fairness and mercy, may justify your imposing less than the maximum possible sentence. The following are among the circumstances, but are not the only circumstances, which you may consider as mitigating circumstances:

\* \* \*

Appellant relies on *Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), but the issue in *Mullaney* was whether the State could be relieved of proving any ele-

ment of a crime beyond a reasonable doubt. The Court held the prosecution must prove every element of the crime and the burden did not shift to the defendant to prove he was acting with "heat or passion" in order to reduce his charge from murder to manslaughter.

In the case at bar the issue of guilt of the crime charged had already been resolved against appellant before mitigating circumstances were considered by the jury. Proof of all the essential elements of the crime was required and the jury found appellant guilty. Thus the holding of *Mullaney* is not applicable under these facts.

Appellant also contends the statute under which he was convicted is unconstitutional because "it does not provide for automatic appeal and makes no provision for comparative review of similarly situated defendants." All of appellant's contentions under this point, and others, have been considered and discussed in detail in *Collins* v. *State*,[1] 261 Ark. 195, 548 S.W. 2d 106 (1977), and *Neal* v. *State*,[2] 261 Ark. 336, 548 S.W. 2d 135 (1977), and found to be without merit. In both these cases this Court carefully reconsidered the constitutionality of §§ 41-4701 et seq. in light of *Gregg* v. *Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Proffitt* v. *Florida,* 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976); *Jurek* v. *Texas,* 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976); *Woodson and Waxton* v. *North Carolina,* 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976); and *Roberts* v. *Louisiana,* 428 U.S. 352, 96 S. Ct. 3001, 49 L. Ed. 2d 974 (1976), as directed by the mandate of the Supreme Court of the United States. We have attached hereto the same Appendix used in *Collins, supra,* to indicate the changes made in the felony murder rule by the Arkansas Criminal Code effective January 1, 1976.

The Arkansas statute having been found constitutional in *Collins* and *Neal,* we now review the jury's findings as to aggravating and mitigating circumstances to ascertain if the verdict is adequately supported by the evidence. As to aggravating circumstances the jury found:

---

[1]Previous opinion 259 Ark. 8, 531 S.W. 2d 13 (1975).
[2]Previous opinion 259 Ark. 27. 531 S.W. 2d 17 (1975).

**(B)**

The Defendant did, beyond a reasonable doubt, in the commission of the capital felony, knowingly create a great risk of death to one (1) or more persons in addition to the victim. (✓)

**(D)**

The capital felony was, beyond a reasonable doubt, committed for pecuniary gain. (✓)

As to mitigating circumstances one of the defenses pled by appellant was intoxication or diminished capacity, and the jury found:

**(B)**

The capital felony was not committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law, was impaired as a result of mental disease or defect, intoxication or drug abuse. (✓)

As indication of the jury's fairness to appellant and serious consideration of mitigating factors the jury, though finding no mitigating circumstances on the list, wrote on the verdict form:

> We, the jury, have found, in our judgment that Dewayne Hulsey had a very poor home life. We do feel that it plays a minor part in his behavior, but not to the extent of committing this brutal crime.

Thereafter the jury found the mitigating circumstances were not sufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficient to justify imposition of the death sentence.

In his reply brief appellant states through "oversight" he omitted his objections in the original brief to the instruction on diminished capacity. The questioned instruction and preceding one read as follows:

Instruction No. 10

You are instructed that the state is required to prove all of the material allegations in the information and to prove them to your minds beyond a reasonable doubt. * * *

### Instruction No. 11

You are instructed that mere weakness of intellect will not shield one who commits a crime; however, a defendant's mental condition may diminish his capacity to form certain specific intents. You are instructed that if you find that the defendant's mental condition at the time of the alleged offense was such that he could not formulate the specific intents that I have instructed you are necessary elements of the crimes charged then you may find him guilty of a lesser offense not requiring specific intents but you could not find him guilty of those crimes which required the finding of specific intents.

The burden of proving diminished capacity is upon the defendant and then must be shown by a preponderance of the testimony in the case.[3]

Relying upon *Mullaney, supra,* appellant contends it was violative of the Fourteenth Amendment Due Process Clause to place the burden of proof of any essential ingredient of the offense charged on the defendant.

After giving the instructions the court asked, "Any additional instructions to be tendered, or objections to be made to the instructions given?" Appellant's attorney replied, "No, Your Honor."

Appellant strenuously argues it would be violation of federal constitutional standards not to review the instruction regardless of Rule 13, *supra.* However, Arkansas' Rule 13 is similar in nature to Rule 30 of the Federal Rules of Criminal Procedure. Rule 30 of the Federal Rules of Criminal Procedure provides:

---

[3]For affirmative defenses see Ark. Crim. Code § 41-601 (1976) (and commentary thereon) which codifies existing law.

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

In *United States* v. *Indiviglio*, 352 F. 2d 276 (2d Cir. 1965), cert. denied 383 U.S. 907, 86 S. Ct. 887, 15 L. Ed. 2d 663 (1966), the court stated:

Federal courts, including the Supreme Court, have declined to notice errors not objected to below even though such errors involve a criminal defendant's constitutional rights.

The position of federal courts that claimed error to which there are no objections will not be reviewed was reaffirmed May 3, 1976, in the cases of *Estelle* v. *Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976) and *Francis* v. *Henderson*, 425 U.S. 536, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976). In *Estelle* the Court held that the failure of a criminal defendant to object to being tried in jail clothing precluded him from seeking to collaterally attack the conviction in federal court. In the *Francis* case the Court found that by failure to object to the composition of the grand jury as required under a Louisiana rule of procedure prior to trial, the defendant in that case was precluded from raising the question of the racial composition of the grand jury in federal habeas corpus proceedings.

We do not view the court's instruction here as an erroneous one since it does not change the burden of proof as to the essential elements of the crime which always remains on the State; only the burden of persuasion as to an affirmative defense is placed on appellant. Furthermore appellant's actions do not reflect diminished capacity as he carefully planned and executed the crime by borrowing a gun, removing the license plate from his car and after completing the crime replacing the license plate and hiding the gun.

In *Rivera* v. *State*, 351 A. 2d 561 (Del. Super 1976), the court held the statute classifying mental illness as an affirmative defense which the defendant must prove by a preponderance of the evidence did not conflict with the due process clause citing in support of its position *Leland* v. *Oregon*, 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952). *Rivera, supra,* has the following comment:

> We think that *Leland* remains the controlling authority on the question. *Leland* has not been overruled by *Mullaney,* in our view, either expressly or implicitly.

Moreover, even if we assume error it is harmless beyond a reasonable doubt. In support of the propriety of the harmless error rationale, the jury did not find any factual existence at all for the defense of diminished capacity as a mitigating circumstance. See answers of jury, *supra.* The finding of no existence whatsoever of diminished capacity as a mitigating factor denies its operable existence regardless of upon whom the burden devolves. Although that determination was made at the sentencing stage, it was based upon the evidence adduced in both bifurcated stages of trial, guilt and sentencing. *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17 (1975).

As was stated in *Collins, supra* (March 7, 1977), and *Neal, supra* (March 28, 1977), comparative review of a sentence is difficult, but we do have the precedent of *Neal* and *Collins* to serve as our guidelines here. In both cases the crimes were brutal murder and the death penalty was imposed.

On the afternoon of the crime here appellant had been

drinking beer and vodka with a friend, Buddy Caldwell. They returned to the friend's house, and appellant borrowed a rifle from him. According to the testimony of Caldwell, appellant stated he was going to rob a service station. Appellant's confession reflected that after removing the license plate from his automobile and borrowing a rifle he drove to a service station. While the attendant, who was crippled in one leg and walked with a decided limp, was putting gas in the car appellant took the gun, got out of his automobile and told the attendant it was a robbery. Then he stated he shot the attendant in the chest as he grabbed for the gun. Thereafter the attendant walked into the station with appellant following him to the cash register. The attendant pleaded "I don't think I am going to die — don't do this, son." Appellant then testified he came out from behind the register to where he could see the attendant who had moved toward the cigarette machine and shot him twice more in the head. Appellant's confession indicated he was aware of what he was doing at the time of committing the crime.

The medical examiner testified:

The deceased had a total of seven gunshot wounds to his head and trunk areas; four of these wounds involved his head and face area. One wound that struck the right corner of his eye, and exit wound near the top portion of his head.

Another wound was a wound that struck the back of the deceased's head, and in its path penetrated vital structures of the brain.

He had another wound that struck the right portion of his mid-face area that in its path entered the brain.

He had a similar wound that was located approximately near the jaw area, that in its path went into the brain.

He also had two wounds involving his left arm, one of which was located in his left upper arm, that went through his arm and penetrated the subcutaneous tissue of the left chest area.

He had a similar wound located and involving the left forearm that also was an exit wound and struck the left chest area. It did not penetrate the chest cavity itself.

The last wound was one that was located in the left lower abdomen, and it penetrated the abdominal cavity, and in its path penetrated the intestines several times. It was removed from one of the bones in the right pelvis area.

While appellant was still at the scene of the crime, Tim Melvin Brooks drove up to the station with two young children. Appellant posed as an attendant. Brooks testified appellant pointed the rifle at him from about ten feet, and said "I've robbed the station and I've killed one man, and I'll kill another." Then appellant pointed at the two boys and said, "If you think anything of your family you will get in your car and forget what you seen."

Appellant was subsequently arrested, and upon conviction the jury sentenced him to death by electrocution pursuant to the bifurcated trial system utilized in capital cases for murder as heretofore set out.

We find under these facts there was clearly sufficient evidence to support the jury's findings that appellant was guilty as charged and that the aggravating circumstances outweighed the mitigating circumstances warranting imposition of the death penalty.

We do not find either passion or prejudice entered into the jury's deliberation, nor do we find imposition of the penalty for this merciless killing was arbitrary, capricious or wanton. We hold the imposition of the death penalty did not violate any of the provisions of the federal or state constitutions.

We have also reviewed the records as required by Ark. Stat. Ann. § 43-2725 (Supp. 1975) and find no reversible error.

Judgment affirmed.

GEORGE ROSE SMITH, HOLT and HICKMAN, JJ., dissent only for the reasons stated in their dissents filed in *Collins* v. *State*, 261 Ark. 195, 548 S.W. 2d 106 (1977).

## APPENDIX

Ark. Stat. Ann. § 41-1501 (Criminal Code 1976) changed the felony murder rule [formerly Ark. Stat. Ann. § 41-4702 (Supp. 1973)] by eliminating mass transit piracy and treason and adding escape in the first degree to the list of felonies to which the rule is applicable; and by including provisions creating accomplice liability (and affirmative defenses for an accomplice); by extending the rule to include a killing committed in immediate flight from an included felony; and by providing that the death be caused "under circumstances manifesting extreme indifference to the value of human life."

It also changed the focus of an unlawful killing involving a public official from (E) the unlawful killing of a public official resulting from a premeditated design to kill anyone, to (d) the unlawful killing of anyone resulting from a premeditated design to kill a public official. It added murder pursuant to agreement as a capital murder.

Ark. Stat. Ann. § 41-1304 (Criminal Code 1976) is different from § 41-4712 (Supp. 1973) in that it states that mitigating circumstances are not limited to those provided in the statute and by adding as mitigation the fact that the defendant has no significant history of prior criminal activity.

Mitigating circumstances are no longer limited to those provided in the statute and now include the circumstance that the defendant has no significant history of prior criminal activity. Ark. Stat. Ann. § 41-1304 (Criminal Code), § 41-4712 (Supp. 1973).

Aggravating circumstances were changed somewhat as they relate to a person who has a prior record of commission of a felony. Ark. Stat. Ann. § 41-1303 (Criminal Code), § 41-4711 (Supp. 1973).

Substantive changes in trial procedure, § 41-1301

(Criminal Code), formerly § 41-4710 (Supp. 1973), include a provision that evidence of mitigating circumstances may be presented regardless of whether the evidence is admissible under the rules of evidence; and for waiver of the death penalty by the prosecutor, expressly or by stipulation as to the facts of mitigating and aggravating circumstances, after trial. § 41-1302 (Criminal Code) allocates the burden of proof during the sentencing phase of a capital trial.