821 F.2d 469
 23 Fed. R. Evid. Serv. 756
 Dewayne HULSEY, Appellee,
v.
Willis SARGENT, Superintendent, Cummins Unit, Arkansas
Department of Correction, Appellant.
Dewayne HULSEY, Appellant,
v.
Willis SARGENT, Superintendent, Cummins Unit, Arkansas
Department of Correction, Appellee.
 Nos. 85-1796, 85-1797.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 9, 1987.
Decided June 12, 1987.
 
 Everett C. Johnson, Washington, D.C., for appellant.
 Jack Gillean, Little Rock, Ark., for appellee.
 Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON,* District Judge.
 LAY, Chief Judge.
 
 
 1
 In 1975 Dewayne Hulsey was convicted in the Arkansas state courts of felony murder and was sentenced to death. Hulsey v. State, 261 Ark. 449, 549 S.W.2d 73 (1977) (en banc). The federal district court[1] in 1981 vacated Hulsey's sentence on the basis of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and in 1985 denied relief on all other claims. Hulsey v. Sargent, No. PB-C-81-2 (E.D.Ark. April 30, 1985).
 
 
 2
 In its order vacating Hulsey's death sentence, the federal district court made detailed findings of fact and conclusions of law concerning the voir dire of prospective juror Mary Creamer. The court found that Creamer should not have been stricken for cause from the jury. The trial court excused Creamer following a lengthy discussion between Creamer and the prosecutor about her views on the death penalty. In its analysis of Creamer's voir dire, the district court discussed what weight should be given to the state trial judge's assessment of prospective jurors' demeanor and credibility.[2] Writing in 1981, Judge Eisele concluded that after Aiken v. Washington, 403 U.S. 946, 91 S.Ct. 2283, 29 L.Ed.2d 856 (1971), federal courts need not afford substantial weight to state court findings in Witherspoon cases:
 
 
 3
 [O]ne is left with the impression that the credibility findings of the trial court, his personal observations, are not to be weighed, at least very heavily, in the balance. In fact, it now appears that federal habeas courts are more or less relegated to a critical analysis of the cold record.
 
 
 4
 Since the time of the district court's original decision in 1981, the Supreme Court has decided Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In that case, the Court made it clear that a federal reviewing court is required to accord a presumption of correctness under 28 U.S.C. Sec. 2254(d) to the trial court's determination that a prospective capital sentencing juror should be excused for cause. 469 U.S. at 429, 105 S.Ct. at 854-55; see also Corcoran v. Wyrick, 757 F.2d 207, 208-09 (8th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985). An assessment of juror bias in a capital case, as in any case, involves credibility findings. These are factual issues subject to Sec. 2254(d). Because the district court relied on standards since altered by the Supreme Court, we deem it necessary to remand the sentencing phase of the case to the court for reconsideration in light of Wainwright v. Witt. In doing so, we pass no judgment on the district court's ultimate finding that the exclusion of Creamer was in violation of Witherspoon principles. Because of the ambiguities in the voir dire, we think it is imperative that the district court review the overall record, reconsider its findings in light of Sec. 2254(d), and pass on the petitioner's claim first.
 
 
 5
 Hulsey also contends that prospective juror, John L. Clark, the first cousin of the county sheriff, should have been excused for cause, and the trial court's failure to do so deprived him of a fair trial.[3] A juror's partiality is a question of fact entitled to a presumption of correctness under Sec. 2254(d). Wainwright v. Witt, 469 U.S. at 429, 105 S.Ct. at 855. During voir dire, the trial court found that Clark was neither actually nor impliedly biased as defined by statute. Ark.Stat.Ann Secs. 43-1919 to -1920 (Repl.1977). The Arkansas Supreme Court agreed and specifically pointed out that the sheriff was not a party to the action and did not testify. Hulsey v. State, 549 S.W.2d at 75; see Ark.Stat.Ann. Sec. 39-105 (Supp.1985) (petit juror related to any party in a case may not serve). Clark also stated that he would give equal credence to testimony of witnesses for both sides. The district court found that Hulsey had failed to rebut the presumption of correctness afforded to these findings by the state courts.[4] This conclusion is not clearly erroneous.
 
 
 6
 Hulsey also maintains that the admission of certain inflammatory photographs violated due process. Admissibility of evidence is a matter of state law and usually does not form the basis for habeas corpus relief. Ruff v. Wyrick, 709 F.2d 1219, 1220 (8th Cir.1983). The trial error must be so great that it infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process. Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986). An Arkansas trial judge has wide discretion in admitting photographs into evidence. Shipman v. State, 252 Ark. 285, 478 S.W.2d 421, 423 (1972).
 
 
 7
 The two challenged photographs are pictures of the victim, showing cotton swabs protruding from facial and abdominal wounds. According to the testimony of Deputy Sheriff Irwin, the cotton swabs were necessary because the large amount of blood made it difficult to locate the bullet wounds. The victim had four gunshot wounds in his head and face and three in his body. Hulsey claims that these photographs were irrelevant to the state's case and were used only to inflame the jury. The trial court denied Hulsey's motion to exclude the pictures but required the state to explain to members of the jury before showing them the pictures why and how they were relevant. The court also gave a cautionary instruction that the sole purpose of the photographs was to show the entry and path of the bullets. The Arkansas Supreme Court held that under state law, the photos were admissible to show the savagery of the attack, as well as to corroborate Hulsey's confession. Hulsey v. State, 549 S.W.2d at 76.
 
 
 8
 Neither this court nor the district court may undertake to correct alleged trial errors in a federal habeas corpus review. Our task is to review the entire trial process to determine whether an alleged error of constitutional dimension fatally infected the trial. Admittedly, the photographs were gruesome, and the cotton swabs distorted an already grisly depiction of a dead human being. The trial court took care to limit the state's use of the pictures and to caution the jury as to their relevance. The pictures served a valid purpose in the state's case, and presumably the jury received them in that light. We agree with the district court that admission of these photos did not render Hulsey's trial so fundamentally unfair that it denied him due process of law.
 
 
 9
 Hulsey finally argues that his due process rights were violated by an in-court identification that was irreparably tainted by suggestive pretrial tactics. Tim Brooks testified at the suppression hearing that he arrived at the service station moments after Hulsey had killed his victim, the station attendant. Hulsey came out to Brooks' car and told Brooks that he was robbing the station and he had already killed one man. Brooks was within four feet of Hulsey and had a full view of his face. Hulsey pointed the rifle at Brooks and two children who were with him and told him to forget what he had seen. As Brooks was leaving, Hulsey walked up to his car, tapped on the window with the gun, and told Brooks that he had his license number.
 
 
 10
 The next day at the sheriff's office, Brooks picked Hulsey's picture out of approximately twenty photographs. Hulsey was not under arrest at the time. After Brooks had picked out Hulsey's picture, Brooks saw Hulsey in the hallway of the sheriff's office and recognized him immediately as the man at the service station. At the trial, Brooks positively identified Hulsey as the man he saw at the station.
 
 
 11
 The admissibility of identification evidence is determined using a two-step test. A court first must determine whether the confrontation between suspect and witness was impermissibly suggestive. If so, the court must ascertain under the totality of the circumstances whether the confrontation created a "very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977).[5] The two-step test reflects the fact that not all impermissibly suggestive confrontations give rise to a substantial likelihood of irreparable misidentification. Ruff v. Wyrick, 709 F.2d at 1220.
 
 
 12
 This is not a case of a one-person showup, Graham v. Solem, 728 F.2d 1533, 1542 (8th Cir.), cert. denied, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984), or a single photo display, United States v. Henderson, 719 F.2d 934, 937 (8th Cir.1983), both instances where we found the pretrial procedures to be impermissibly suggestive. Even if the pretrial procedures used here were suggestive, our inquiry does not end. Brooks' identification is nonetheless admissible if there is no possibility of irreparable misidentification.
 
 
 13
 Brooks observed Hulsey from close range under bright lights at the service station. Hulsey stood next to Brooks' car on two occasions. Hulsey held the rifle as he spoke to Brooks, an act that surely commanded Brooks' undivided attention. Brooks was consistent and certain in his identification of Hulsey. We conclude that there was not a substantial likelihood of irreparable misidentification.[6]
 
 
 14
 The sentencing phase is remanded to the district court for reconsideration in light of Wainwright v. Witt. In all other respects, the opinion of the district court is affirmed.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable Garnett T. Eisele, United States District Court for the Eastern District of Arkansas, presiding
 
 
 [2]
 The Arkansas Supreme Court determined that the trial judge was justified in excusing Creamer for cause because he was in the best position to weigh her "somewhat contradictory assertions" in order to determine, as he did, whether she was qualified under the rule of Witherspoon. Hulsey v. State, 268 Ark. 312, 595 S.W.2d 934, 936 (1980)
 
 
 [3]
 The state argues that Hulsey is barred by Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because he did not object at the time of trial, nor did he ask that Clark be excused for cause. Hulsey used one of his preemptory challenges to remove Clark. The Arkansas Supreme Court acknowledged the procedural default but reached the merits of the issue anyway and found no error. Hulsey v. State, 549 S.W.2d at 75. If the state court ignores a procedural default and addresses the merits of a claim, the defendant's failure to object at trial will not bar review of the federal habeas corpus claim. See Worthan v. Wyrick, 805 F.2d 303, 305 n. 4 (8th Cir.1986), cert. denied sub nom, --- U.S. ----, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987)
 
 
 [4]
 The state elected not to seek an immediate appeal in 1981 on the Witherspoon ruling. The district court retained jurisdiction over the other claims but did not decide them until 1985. Wainwright adhered to and applied the presumption of correctness under Sec. 2254(d) to the state court's findings. In effect, the district court's rulings in 1981 and 1985 are inconsistent in that the first did not apply Sec. 2254(d) and the second did. Presumably the intervening decision of Wainwright was the reason for the difference
 
 
 [5]
 The second inquiry goes to the reliability of the identification. Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253. In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382-83, 34 L.Ed.2d 401 (1972), the Court set out the factors to be considered in determining the reliability of the identification. These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation
 
 
 [6]
 We agree with the district court's observation that even if Brooks' identification were deemed unreliable, Hulsey can show no prejudice since he admitted at trial that he shot the service station attendant