UNITED STATES of America, Appellee,

v.

Charles Lloyd PATTERSON, Sr., Appellant.

No. 93–2817.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1993.

Decided Feb. 25, 1994.

Rehearing Denied April 8, 1994.

802

Counsel who presented argument on behalf of the appellant was H.E. Cummins, Little Rock, AR. Anthony J. Sherman, Little Rock, AR.

Counsel who presented argument on behalf of the appellee was Fletcher Jackson, Asst. U.S. Atty., Little Rock, AR.

Before McMILLIAN and MAGILL, Circuit Judges, and JACKSON,* District Judge.

McMILLIAN, Circuit Judge.

Defendant Charles Lloyd Patterson, Sr., appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas sentencing him to 330 months in prison, five years of supervised release, and a special assessment of $150, following his conviction by a jury on three counts of aircraft piracy, interference with flight crew, and possession of a stolen aircraft.[2] For reversal, defendant argues that the district court (1) erred in denying his motion to dismiss Count III of the indictment on double jeopardy grounds; (2) abused its discretion in denying his motion to sever Count III of the indictment; (3) erred in permitting in-court identifications by witnesses previously shown single-photograph displays of his picture; (4) erred in holding that the evidence supporting his Count III conviction was sufficient; and (5) erred in computing his criminal history category at sentencing. For the reasons discussed below, we affirm.

## I. Background

*Cessna aircraft hijacking in Arkansas*

On April 9, 1992, a man fitting defendant's description chartered a flight on a private Cessna aircraft from Pine Bluff, Arkansas, to Little Rock, Arkansas, under the name L. King. The chartered plane was a Cessna 172P aircraft, tail number N62112. En route, the man threatened the pilot, Phillip O. Taylor, with a Marksman .177 caliber air gun and took control of the plane. Taylor was the only other person on the plane. The hijacker bound Taylor and covered his head with a bag during part of the flight. He left Taylor in Carlisle, Arkansas, then flew off in the plane. At the time of the hijacking, defendant had been in Pine Bluff, Arkansas, on furlough from the Arkansas Department of Corrections. Defendant had previously earned a pilot's license with multi-engine and instrument ratings.

On the next day, April 10, 1992, the following events took place. In the early morning hours, a man believed to be defendant broke into the home of Alma and Ed Ward in Batesville, Arkansas. He entered their bedroom, threatened them with a weapon, and stole a .22 caliber Derringer pistol, several hundred dollars in cash, and their Cadillac. Later that day, Taylor, the hijacked pilot, was contacted by the Arkansas Department of Corrections. Officials showed him a single photograph of defendant. Taylor identified defendant as the hijacker. Meanwhile, in Sulphur Springs, Texas, a plane fitting the description of the stolen Cessna landed at the airport. Janice Lancaster was in charge of the airport and logged the plane's landing. A man fitting defendant's description came into the airport and asked Lancaster for the use of a telephone.

On April 12, 1992, FBI agents interviewed Lancaster and showed her a single picture of defendant in a newspaper. She identified him as the man who had entered the terminal two days before. That same day, a plane identified as the stolen Cessna from Pine Bluff, Arkansas, was found in a hangar at the Sulphur Springs airport.

*Piper aircraft hijacking in Colorado*

On June 7, 1992, a man fitting defendant's description used the name Fred Ward to arrange an introductory lesson with Dakota Ridge Aviation at the Boulder County Airport in Boulder, Colorado. The man was given a lesson by flight instructor Lisa Beadling in a Piper Warrior II aircraft. During the lesson, the man used a .22 caliber Derringer pistol, identified as the gun stolen from Alma and Ed Ward, to hijack the plane. The hijacker released Beadling, the only other person on the plane, at the Tri–County Air-

---

* The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

2. The district court ordered defendant's prison term and supervised release to run concurrently with a 300–month prison term and five-year supervised release imposed in a prior criminal action in the District of Colorado.

port in Erie, Colorado, and flew off in the plane.

Beadling positively identified another man as the hijacker of the Piper aircraft. That man had a solid alibi. Beadling later identified defendant as the hijacker. On both occasions, she was shown a single-photograph display.

Evidence showed that the stolen Piper aircraft was flown to Woodward, Oklahoma, Horseshoe Bend, Arkansas, and Marshall, Texas, where it was abandoned. During that same period of time, defendant was a fugitive from the Arkansas Department of Corrections, having disappeared from Pine Bluff, Arkansas, the previous April.

On June 19, 1992, defendant was arrested at a motel in Odessa, Texas. He was indicted in the Eastern District of Arkansas on charges of aircraft piracy, interference with flight crew, and possession of a stolen aircraft. The first two counts were based upon the April 1992 Arkansas hijacking involving pilot Philip Taylor and the Cessna aircraft. The third count was based upon the June 1992 Colorado hijacking involving instructor Lisa Beadling and the Piper aircraft which was flown from Boulder, Colorado, to Marshall, Texas, with a stop in Horseshoe Bend, Arkansas. Defendant was tried in March of 1993. The defense at trial was based upon a theory of mistaken identity. The jury found defendant guilty on all three counts. At sentencing, the district court determined that defendant's total offense level was 42 and his criminal history category was VI, resulting in a guideline range of 360 months to life. The district court then departed downward, sentencing defendant to 330 months imprisonment, to run concurrently with a prison sentence imposed in an earlier federal criminal action in the District of Colorado. In that case, defendant was convicted on five counts arising out of the June 1992 Piper aircraft hijacking which originated in Boulder, Colorado. In the Colorado case, defendant was sentenced to a total of 300 months imprisonment. Defendant timely appealed the judgment of the Arkansas district court.

## II. Discussion

*Double jeopardy*

■ Defendant argues that his conviction under 18 U.S.C. § 2313, for possession of a stolen aircraft, violates the double jeopardy clause of the Fifth Amendment because he previously had been convicted under 18 U.S.C. § 2312, for transportation of a stolen aircraft, arising out of the same conduct and set of facts. Under § 2313, the government was required in the present case to prove that defendant knowingly *possessed* a stolen aircraft which had crossed state lines. Under § 2312, the government was required in the Colorado case to prove that defendant knowingly *transported* a stolen aircraft across state lines. Defendant contends that the first crime is therefore a lesser included offense of the second crime because transportation is a combination of possession and movement. Defendant also maintains that the conduct which the government proved in this case and the earlier Colorado criminal case is the same. Consequently, defendant argues, the district court erred in denying his motion to dismiss Count III of the indictment.

The government argues in response that defendant was charged with two distinct crimes in Colorado and Arkansas. In the Colorado case, defendant was charged with transporting the Piper aircraft from Colorado to Oklahoma on June 7, 1992. In the present case, defendant was charged with possessing the same aircraft in Arkansas on June 9, 1992. The government relies on *United States v. Easley,* 927 F.2d 1442, 1451 (8th Cir.1991) (*Easley*), which held that the defendants' double jeopardy rights had not been violated where they were convicted of mailing obscene materials from California to Minnesota, even though they had previously been indicted in Washington for mailing obscene materials from California to Washington and both mailings were part of a single ongoing mail order business.

In *Easley,* this court favorably cited *United States v. Linetsky,* 533 F.2d 192, 197 (5th Cir.1976), in which the Fifth Circuit found no double jeopardy violation under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)

(*Blockburger*), where similar counts in two indictments involved acts which were "temporally and geographically distinct." *Easley,* 927 F.2d at 1451. *Blockburger* states that no double jeopardy violation occurs if each of the two charges in question requires proof of at least one fact that the other does not. 284 U.S. at 304, 52 S.Ct. at 182. However, *Easley* also applied *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990) (*Grady* ) (if *Blockburger* test is satisfied, next critical inquiry is what conduct prosecution will prove). In *United States v. Dixon,* ___ U.S. ___, ___, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993) (*Dixon* ), the Supreme Court overruled *Grady,* but specifically left intact the broader rule of *Blockburger.*

Applying the *Blockburger* test in the present case, we hold that the district court correctly concluded that Count III of the indictment in the present case did not violate double jeopardy because it required the government to prove possession of the Piper aircraft in Arkansas, whereas the transportation charge in the Colorado indictment required the government to prove transportation of the Piper aircraft in Colorado. Each charge required proof of a fact that the other did not. We therefore hold that the district court did not err in denying defendant's motion to dismiss Count III of the indictment.

*Severance*

■ Defendant next argues that he was entitled to a severance of Count III of the indictment, for possession of the stolen Piper aircraft, from Counts I and II, for offenses related to the Cessna aircraft hijacking. Defendant argues that the government's evidence on Count III was not relevant to the charges in Counts I and II. He further contends that the Count III evidence would have been no more than bad character evidence in a trial of only Counts I and II and therefore would have been excludable under Fed.R.Evid. 608. Consequently, he maintains, the district court abused its discretion in denying his motion for severance because joinder of the charges at trial improperly prejudiced his defense.

The government argues that its decision to join all three counts in the indictment was proper because the offenses were of a similar character. The government further contends that, in any event, no prejudice to defendant resulted from the joinder of offenses because the defense was primarily one of mistaken identity. Therefore, the government maintains, the Count III proof would have been admissible under Fed.R.Evid. 404(b) to prove identity as to Counts I and II.

Rule 8 of the Federal Rules of Criminal Procedure provides in pertinent part that "[t]wo or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar character...." However, under Fed.R.Crim.P. 14, the district court may sever offenses and order separate trials of counts if it appears that a defendant is prejudiced by the joinder. "The decision to sever is within the sound discretion of the trial judge and the denial of a motion to sever is not subject to reversal absent a showing of 'real prejudice.' " *United-ed States v. Jones,* 880 F.2d 55, 61 (8th Cir.1989) (quoting *United States v. Adkins,* 842 F.2d 210, 212 (8th Cir.1988)). In the present case, defendant asserted a defense based upon a claim of false or mistaken identity. The Piper hijacking evidence, therefore, could have been admitted under Fed.R.Evid. 404(b) to prove that defendant was correctly identified as the perpetrator of the Cessna hijacking. Therefore, no real prejudice resulted from the joinder of Count III with Counts I and II. We hold that the district court did not abuse its discretion in denying defendant's motion for a severance of counts.

*Single-photograph displays*

■ Defendant next contends that his constitutional rights were violated and reversible error occurred when government witnesses were permitted to identify him in court after they had been shown his photograph by law enforcement officials. We follow a two-step analysis in reviewing the district court's admission of these in-court identifications. First, we must determine whether the initial confrontation between the suspect and the witness was impermissibly suggestive; if so, we must then determine whether, under the totality of the circumstances, the suggestive

procedure created a "very substantial likelihood of irreparable misidentification." *Hulsey v. Sargent,* 821 F.2d 469, 473 (8th Cir. 1987) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (*Manson*) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) (*Simmons*))); *and see United States v. Murdock,* 928 F.2d 293, 297 (8th Cir.1991) (*Murdock*); *Ford v. Armontrout,* 916 F.2d 457, 459 (8th Cir.1990).

■ Single-photograph displays such as the ones employed in the present case are considered impermissibly suggestive by this court. *Murdock,* 928 F.2d at 297. Therefore, the remaining question is whether, under the totality of the circumstances, the suggestive single-photograph procedure created a very substantial likelihood of irreparable misidentification. In *Manson,* the Supreme Court explained that confrontation evidence is admissible if, despite the suggestiveness of a single-photograph display, the independent reliability of the evidence can be established. 432 U.S. at 110, 97 S.Ct. at 2250. Reliability is the "linchpin" in determining admissibility and is determined by consideration of a set of factors set out in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. Those factors, as applied to the present case, are: the opportunity of the witnesses to view the suspect at the relevant time; the witnesses'

degree of attention when viewing the suspect; the accuracy of the original descriptions given by the witnesses; the level of certainty demonstrated in their identifications; and the passage of time between their observations of the suspect and the photographic identifications.[3] *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382. In addition, the inherently suggestive nature of a single-photograph display must be weighed against these factors. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ Defendant specifically contends that the district court erred in allowing witnesses Phillip Taylor and Janice Lancaster to identify him in court, after they had been shown single-photograph displays of his picture by law enforcement officers.[4] Defendant argues that the independent reliability of these witnesses' in-court identifications was not adequately established. As to Phillip Taylor, defendant highlights the facts that fifteen hours after the Cessna hijacking, Taylor was contacted by an official from the Arkansas Department of Corrections who said that they thought they had the hijacker and that they would bring a photograph to Taylor for identification. Taylor identified defendant based upon the single photograph.[5] Defendant argues that Taylor only had a limited opportunity to view the hijacker and that, during the flight, Taylor was either looking elsewhere or had a bag over his head. Defendant further contends that Taylor's attention was not well focused during the brief

3. Under a totality of the circumstances test, we of course consider all relevant circumstances surrounding both the photographic and the in-court identifications. However, contrary to the parties' apparent assumptions, we understand the fifth *Neil v. Biggers* factor to apply to the circumstances surrounding the initial confrontation, in this case the photographic identifications. We therefore look to the lapse of time between Taylor's and Lancaster's observations of the suspect on April 9, 1992, and April 10, 1992, respectively, and their photographic identifications only a day or two later. *Compare Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (photographic identification took place only two days after the crime; "[w]e do not have here the passage of weeks or months between the crime and the viewing of the photograph"); *Ford v. Armontrout,* 916 F.2d 457, 459 (8th Cir.1990) (noting that the confrontation occurred less than twenty minutes after the crime).

4. Defendant also notes that Lisa Beadling, the pilot of the Piper aircraft, positively identified a different man as her hijacker when authorities showed her a single photograph of that man. Later, she identified defendant as her hijacker in a separate one-photograph showing. Defendant highlights these facts to emphasize how very suggestive one-photograph displays can be and how inherently unreliable subsequent identifications are. However, as the government points out, Beadling did not testify at trial.

5. Taylor also allegedly appeared on a television program, *America's Most Wanted,* and identified defendant on national television as his hijacker. Defendant argues that Taylor's appearance on national television identifying defendant "locked" his position at that time.

opportunities he had to view the hijacker because he was either busy piloting the plane or running away from the plane. Defendant also claims that Taylor's estimates of the hijacker's height, weight, and age were "grossly inaccurate" as compared to defendant's actual physical characteristics. Finally, he argues that the apparent certainty of Taylor's photographic identification is not indicative of reliability because of the added suggestiveness of the officer's statement "we believe we have the man who hijacked you." As to Janice Lancaster, defendant argues that she only had a brief opportunity to view the man who came into the Sulphur Springs airport on April 10, 1992, and asked her if he could use the telephone. Defendant contends that she had no reason to pay particularly close attention to that man. Defendant also characterizes her description of the man she saw as "not unique to Charles Patterson in any way."

The government maintains that Taylor did have a good opportunity to view the hijacker during the preflight briefing and the early part of the flight. Even after the hijacker took control, Taylor had an opportunity to look at the hijacker after he had been released. The government also notes that Taylor described the hijacker as over 6' tall, 220–230 pounds, with black hair. At the time of his conviction, defendant was approximately 6'1", 250 pounds, with brown hair. The government also contends that Taylor made the identification with certainty. As to Lancaster's identification, the government contends that Lancaster did get a good look at the man in question because they talked and she noted that he gave an unusual reason for landing. The government states that she positively identified defendant in court, and she testified that her in-court identification was not based upon the photograph she had seen. Moreover, before viewing defendant's photograph, she described the man who came in the airport as 6' or 6'2", 250 pounds, with thin dark hair.

Each case must be considered on its own facts. *Simmons,* 390 U.S. at 384, 88 S.Ct. at 971. Upon consideration of the *Neil v. Biggers* factors as applied to the facts in the present case, weighed against the inherent suggestiveness of the single-photograph displays, we hold that Taylor's and Lancaster's in-court identifications had sufficient indicia of reliability in light of the witnesses' opportunities to observe the suspect, their attentiveness at the time, the accuracy of their original descriptions, the level of certainty demonstrated in their identifications, and the relatively short period of time between when they observed the suspect and when they identified defendant's picture. Under the totality of the circumstances, we hold that the suggestive single-photograph procedures employed did not create a very substantial likelihood of irreparable misidentification. Accordingly, we hold that the district court did not err in permitting Phillip Taylor and Janice Lancaster to identify defendant at trial.[6]

*Sufficiency of the evidence*

Defendant next argues that the evidence was insufficient as a matter of law to support his conviction on Count III of the indictment, possession of a stolen aircraft, because the government's evidence failed to create an inference that the Piper aircraft was in fact stolen. Defendant contends that the only evidence of this element was that someone had reported that the plane had been stolen. The pilot, Lisa Beadling, who would have been the best person to testify that the plane was stolen, was not called as a witness at trial.

In response, the government highlights evidence that the Piper aircraft was chartered for a lesson, it did not return when the lesson was scheduled to be finished, the flight instructor returned to the airport in a police car, the plane was reported to the police as stolen, and when it was found, defendant's fingerprints were on it and the serial number had been altered.

6. We note that the admission of the in-court identification may alternatively be reviewed for harmlessness beyond a reasonable doubt. *United States v. Davila,* 964 F.2d 778, 782 (8th Cir. 1992); *see also Williams v. Armontrout,* 877 F.2d 1376, 1381 (8th Cir.1989) (applying harmless beyond a reasonable doubt standard on habeas review).

"In reviewing the sufficiency of the evidence to sustain a guilty verdict, we look at the evidence in the light most favorable to the government and accept as established all reasonable inferences supporting the verdict." *United States v. Yagow,* 953 F.2d 423, 426 (8th Cir.1992); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Upon review of the evidence in the record, we hold that it was sufficient under this standard to support the jury's guilty verdict on Count III. The jury could reasonably have inferred from the evidence noted by the government that the Cessna plane had been stolen.

*Criminal history calculation*

■ Defendant was sentenced in this case to 330 months imprisonment, to run concurrently with a 300-month sentence imposed in the Colorado case. Defendant argues that the district court erred in calculating his criminal history category as VI. Specifically, he argues that the district court should have counted some of his prior sentences as resulting from "related" rather than "unrelated" cases under Guideline § 4A1.2(a)(2). Presumably, if the district court had treated the prior convictions as related, defendant's criminal history category would have been lower. Defendant claims that this error originated in the Colorado case because the probation office there erroneously recommended that some of his prior convictions be treated as unrelated in its presentence report. In the Colorado case, defendant was also given a criminal history category of VI.

The government argues that defendant's appeal as to the correct criminal history category is moot. Defendant's offense level was calculated as 42, which he does not challenge. At offense level 42, the applicable guideline range, *for all criminal history categories,* is 360 months to life. Therefore, the district court's starting point would have been the same, regardless of the district court's application of Guideline § 4A1.2(a)(2). The district court chose to depart downward, yet wanted to do so in a way that would reflect the additional wrongdoing addressed in the present case, but not in the Colorado case. Therefore, the government contends, defendant's sentence would have been the same at any criminal history category.

The 330-month sentence imposed in the present case represents a downward departure from the applicable guideline range, regardless of defendant's criminal history category. We therefore hold that defendant's sentence is not reviewable under *United States v. Left Hand Bull,* 901 F.2d 647, 650 (8th Cir.1990) (holding that we may not review the extent of a district court's downward departure from the guidelines). Consequently, we need not reach the question of whether the district court erred in applying Guideline § 4A1.2(a)(2) and calculating defendant's criminal history category.[7] *Compare United States v. Dutcher,* 8 F.3d 11, 12 (8th Cir.1993) (guideline sentence, including disputed four-level enhancement, is non-reviewable where district court departed below the applicable guideline range with or without the enhancement). We therefore hold that we lack authority to review defendant's sentence in the present case.

For the foregoing reasons, the judgment of the district court is affirmed.

---

7. Defendant argues that "even though [the application of § 4A1.2(a)(2) ] is not of paramount importance here, it is a critical issue for other defendants.... The Court should take this opportunity to reconcile the cases dealing with this guideline provision." Defendant, in essence, invites this court to write an advisory opinion, which we will not do. *See, e.g., Mark v. Nix,* 983 F.2d 138, 140 (8th Cir.1993) (per curiam) (declining to address the merits of a claim where doing so would not affect the rights of the parties and would therefore constitute an advisory opinion).